IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDICIAL WATCH, INC.**,<br><br>*Plaintiff*,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>*Defendant*. | Case No. 1:24-cv-00700-TJK<br>(Consolidated Cases) |
| **HERITAGE FOUNDATION,** *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>*Defendant*. | |
| **CABLE NEWS NETWORK, INC.**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>*Defendant*. | |

**U.S. DEPARTMENT OF JUSTICE'S RESPONSE TO
MEDIA PLAINTIFFS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

1

Pursuant to Local Rule 7(h)(1), Defendant United States Department of Justice ("Department") hereby respectfully submits its response to the Media Plaintiffs' statement of material facts as to which there is no genuine dispute.

|   | **The Media Plaintiffs' Statement Of Material Facts Not In Genuine Dispute** | **The Departments' Response to the Media Plaintiffs' Statement of Material Facts Not in Genuine Dispute** |
|---|---|---|
| 1. | On January 9, 2023, the public learned that Biden's personal attorneys had found documents marked classified two months earlier while packing up files at the Penn Biden Center for Diplomacy and Global Engagement in Washington, DC. *See, e.g.*, Declaration of Charles D. Tobin ("Tobin Decl.") Ex. C. | Immaterial, as the cited article speaks for itself. |
| 2. | The public also learned that Attorney General Merrick Garland had initially assigned U.S. Attorney John Lausch "to find out how the material marked classified ended up at the Penn Biden Center." *Id.* at 3. | Immaterial, as the cited article speaks for itself. |
| 3. | Three days later, on January 12, 2023, the White House confirmed that Biden's attorneys had located a second set of documents with classification markings at Biden's private residence in Wilmington. *See, e.g., id.* Ex. D. | Immaterial, as the cited article speaks for itself. |
| 4. | That same day, the Attorney General announced that he had appointed U.S. Attorney Robert K. Hur "to serve as Special Counsel" and "conduct the investigation" into the "possible unauthorized removal and retention of classified documents or other records discovered at the Penn Biden Center for Diplomacy and Global Engagement and the Wilmington, Delaware private residence of President Joseph R. Biden, Jr." *See* ECF 34-5. | Immaterial, as the cited article speaks for itself. |
| 5. | In August 2023, news reports revealed that Hur's office and Biden's attorneys were negotiating "over the terms under which [Biden] would be interviewed," including "whether the interview would be in person | Immaterial, as the cited news reports speak for themselves. |

| | | |
|---|---|---|
| | and, if so, where it might happen – as well as the range of topics and questions that would be covered." *See, e.g.*, Tobin Decl. Ex. E at 1-2. | |
| 6. | Hur ultimately interviewed Biden in person, for approximately five hours, on October 8-9, 2023. *See id.* Ex. A at 210. | Undisputed. |
| 7. | On February 5, 2024, Hur transmitted to Garland a "'confidential report explaining the prosecution or declination decisions'" that Hur had reached as to Biden. *See id.* Ex. A at 1. | Undisputed. |
| 8. | On February 7, 2024, Garland notified House and Senate Judiciary Committee leadership that Hur had concluded his investigation. *See id.* Ex. F. | Immaterial, as the cited letter speaks for itself. |
| 9. | Garland stated that he is "committed to making as much of the [Hur Report] public as possible, consistent with legal requirements and Department policy." *Id.* | Immaterial, as the cited letter speaks for itself. |
| 10. | On February 8, 2024, the Department of Justice ("DOJ") released the Hur Report, which declined to charge Biden in connection with the classified documents investigation. | Undisputed that the Department publicly released the Hur Report, and that Special Counsel Hur declined to charge President Biden. |
| 11. | A key section of the Hur Report was the description of Biden's interview with Hur and its impact on his office's ultimate decision not to charge the President. Hur wrote:<br><br>We have also considered that, at trial, Mr. Biden would likely present himself to a jury, as he did during our interview of him, as a sympathetic, well-meaning, elderly man with a poor memory. Based on our direct interactions with and observations of him, he is someone for whom many jurors will want to identify reasonable doubt. It would be difficult to convince a jury that they should convict him—by then a former president well into his eighties—of a serious felony that requires a mental state of willfulness.<br><br>*See id.* Ex. A at 6. | Immaterial, as the Hur Report speaks for itself. This paragraph consists of Plaintiffs' characterization of the Hur Report. Defendant respectfully refers the Court to the Hur Report for a complete and accurate statement of its contents. In particular, the Hur Report notes several grounds for declining prosecution. |

3

| | | |
|---|---|---|
| 12. | In line with this passage, Hur repeatedly characterized Biden's memory as "hazy" and "faulty" and stated that Biden exhibited "diminished faculties in advancing age." *Id.* at 208, 248, 242. | Immaterial, as the Hur Report speaks for itself. This paragraph consists of Plaintiffs' characterization of the Hur Report. Defendant respectfully refers the Court to the Hur Report for a complete and accurate statement of its contents. |
| 13. | Hur wrote that Biden "did not remember when he was vice president" and that "[h]e did not remember, even within several years, when his son Beau died." *Id.* at 208. | Immaterial, as the Hur Report speaks for itself. This paragraph consists of Plaintiffs' characterization of the Hur Report. Defendant respectfully refers the Court to the Hur Report for a complete and accurate statement of its contents. |
| 14. | In correspondence released with the Hur Report, White House attorneys flatly disputed and put at issue Hur's characterization of Biden's memory, writing that they "do not believe that the report's treatment of President Biden's memory is accurate or appropriate" and that "there is ample evidence from your interview that the President did well in answering your questions about years-old events over the course of five hours." *Id.* at 384. | Immaterial, as the cited letter speaks for itself. This paragraph consists of Plaintiffs' characterization of a letter attached to the Hur Report. Defendant respectfully refers the Court to the letter for a complete and accurate statement of its contents. |
| 15. | In remarks to the press, Biden likewise forcefully disputed Hur's characterization of his memory. *See, e.g.*, Tobin Decl. Ex. G. | Immaterial, as the cited media article speaks for itself. This paragraph consists of Plaintiffs' characterization of a media article. Defendant respectfully refers the Court to the media article for a complete and accurate statement of its contents. |
| 16. | On March 12, 2024, Hur testified before the House Judiciary Committee about his investigation and decision not to charge Biden and "stood steadfastly by the assessments in his 345-page report that questioned Biden's age and mental competence." *See, e.g., id.* Ex. H. | Immaterial, as Mr. Hur's testimony and the cited media article speak for themselves. This paragraph consists of Plaintiffs' characterization of Mr. Hur's testimony and an article. Defendant respectfully refers the Court to the testimony and media article for a complete and accurate statement of their contents. |
| 17. | That same day, DOJ and Congress released transcripts of Biden's interview with Hur. *See id.* | Undisputed that the Department released redacted transcripts of Mr. Hur's interview of President Biden. |
| 18. | Those transcripts "provide[] a fuller picture of the five-hour conversation between the two and context around some of the statements that appeared in the report," | This paragraph consists of Plaintiffs' characterization of a media article. Defendant respectfully refers the Court to the media |

|     |     |     |
| --- | --- | --- |
|     | including that "[w]hile the president did stumble over some dates and facts, he recalled many others clearly, frequently describing events or details from years ago." *See, e.g.*, *id.* Ex. I. | article for a complete and accurate statement of its contents. |
| 19. | During the hearing, Judiciary Committee Chair Rep. Jim Jordan questioned Hur about "the audio tapes of the people you interviewed during your investigation" and asked, "Is there any reason you can see why the American people and their representatives in the United States Congress should not have access to those tapes?" Hur responded:<br><br>[W]hat I can tell you is that my assessment that went into my conclusions that I describe in my report was based not solely on the transcript. It was based on all of the evidence, including the audio recordings. . . . [T]he audio recordings were part of the evidence, of course, that I considered in coming to my conclusions.<br><br>*See id.* Ex. B at 4. | Immaterial. This paragraph consists of Plaintiffs' characterization of Mr. Hur's congressional hearing. Defendant respectfully refers the Court to testimony from the hearing for a complete and accurate statement of its contents. |
| 20. | Between February 16, 2024 and April 1, 2024, each of the Press Coalition plaintiffs submitted a FOIA request to DOJ for the recording of Biden's interview with the Special Counsel. *See* Am. Compl. Exs. A, C, E, G, I, K, M, O, Q, S, U, W (ECF No. 26-1). | Undisputed. |
| 21. | DOJ constructively denied each of those requests. *See id.* ¶¶ 46-47 (ECF No. 26). | This paragraph consists of a legal conclusion, not statements of fact. |
| 22. | In response to congressional subpoenas, Biden has asserted executive privilege over the Recording. *See* ECF No. 34-8. | Undisputed. |
| 23. | In requesting that assertion of privilege, Garland explained that "the concern at issue here" is that "disclosure might hamper prosecutorial efforts in future cases." *See* ECF No. 34-7 at 5. | This paragraph consists of Plaintiffs' characterization of a letter dated May 15, 2024. Defendant respectfully refers the Court to the letter for a complete and accurate statement of its contents. |

5

DATED:  July 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

/s/ Joshua C. Abbuhl
JOSHUA C. ABBUHL (D.C. Bar No. 1044782)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 11518
Washington, D.C. 20005
Telephone: (202) 616-8366
Facsimile: (202) 616-8470
Joshua.Abbuhl@usdoj.gov

*Counsel for the Defendant*