IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HERITAGE FOUNDATION,** *et al.***,**<br><br>          Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>          Defendant.<br><br>**JUDICIAL WATCH, INC.,**<br><br>          Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>          Defendant.<br><br>**CABLE NEWS NETWORK, INC.,** *et al.***,**<br><br>          Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>          Defendant. | Case No. 1:24-cv-700 (TJK)<br>(Consolidated Cases) |

**MOTION TO EXPEDITE**

The Parties' Cross-Motions for Summary Judgment in this Matter have been fully briefed since August 1, 2024, pursuant to the expedited briefing schedule set by the Court. Given the nationally important issues at stake, this Court should expedite this action under 28 U.S.C. § 1657's (the "Civil Expediting Act") strong preference for expedited resolution of FOIA actions and issue a decision forthwith.

The Act provides, as relevant here, that "the court shall expedite the consideration" of a civil action "if good cause therefor is shown." *Id.* § 1675(a). Good cause is shown "if a right under the Constitution of the United States or a Federal Statute (*including rights under section 552 of title 5*) would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id.* (emphasis added). The Act's citation to FOIA reflects Congress's belief that "[s]peed is an essential element in this process of *de novo* review under FOIA" and that "'[p]rompt review of decisions denying access to government information is critical to FOIA users and to the purposes of the Act.'" *Ferguson v. FBI*, 722 F.Supp. 1137, 1144 (S.D.N.Y. 1989) (quoting H.R. Rep. No. 985, 98th Cong., 2d Sess. 6). "Congress reasoned that prompt adjudication of FOIA cases (a) foster the important goal of creating an informed citizenry; (b) involve remedies of a 'transitory' nature, *i.e.*, that delay could render an information request 'of no value at all;' and (c) do not 'involve extended discovery or testimony and therefore do not burden court dockets for extensive periods of time.'" *Ontario Forest Indus. Assoc. v. United States*, 444 F.Supp.2d 1309, 1319 (C.I.T. 2006) (quoting H. Rep. No. 98-985, at 5–6 (1984)). Accordingly, it is "'the intent of the Committee that the 'good cause' provision be liberally construed by the courts in granting requests for expedited consideration under the Freedom of Information Act.'" *Ferguson*, 722 F.Supp. at 1144 (quoting 1984 U.S.C.C.A.N at 5784). "Providing an example of when this criteria is met, both the statute and legislative history invoke cases brought under the Freedom of

Information Act ("FOIA") as paradigmatic examples of 'good cause.'" *Ontario Forest Indus. Assoc.*, 444 F.Supp.2d at 1319; *see also Brennan Ctr. v. U.S. Dep't of State*, 300 F.Supp.3d 540, 547–55 (2018) (granting motion to expedite FOIA Action); *cf. RICU LLC v. HHS*, 22 F.4th 1031, 1025 (D.C. Cir. 2022) (granting unopposed motion to expedite challenge to rule barring Medicare reimbursement of providers conducting telehealth outside of the United States because of need for telehealth during COVID-19 pandemic).

This case easily meets the "good cause" standard for expedition for at least two reasons. First, the public needs to know—before the November 5 Presidential election—whether the current Administration, including Vice President Harris, was forthcoming to the public about President Biden's condition. The Special Counsel declined to recommend prosecution in large part because President Biden would "likely present himself to the jury, as he did during his interview with our office, as a sympathetic, well-meaning, elderly man with a poor memory" as well as with "diminished faculties." *See* ECF No. 39 at 5–6. The President and his allies—including the Vice President—have repeatedly and sharply disputed Special Counsel Hur's conclusions regarding the President's "poor memory" and "diminished faculties." *Id.* at 7–10. Even today, the Vice President continues to insist that President Biden has the "intelligence, the commitment and the judgment and disposition" Americans expect from their President. M. Shear, *Harris Says She Has 'No Regrets' About Defending Biden's Capabilities*, N.Y. Times (Aug. 29, 2024); *see also Vice President Kamala Harris is Being Interviewed*, FOX: Special Report, 2024 WLNR 19609284, at *12 (Oct. 16, 2024). Whether the current Administration (including the Vice President) was forthcoming about the President's condition is an important issue to many voters. Knowing whether the Special Counsel's conclusions are correct will help the public judge for themselves

whether the current Administration (including Vice President Harris) has been forthcoming about the President's condition.

Second, the public has an immediate interest in knowing whether President Biden has the mental capabilities to serve out the rest of his term. President Biden is still in Office through January 20, 2025, so resolving the dispute between Special Counsel Hur and the rest of the Administration remains an urgent matter. Available reporting suggests that President Biden was pressured to drop out by his own party precisely because of widespread concerns and public perceptions regarding his mental and physical fitness for Office. There is even reporting by a Pulitzer-winning journalist that President Biden dropped out only under threat of removal via Section 4 of the 25th Amendment. *See* Seymour Hersh, *Leaving Las Vegas* (July 27, 2024), https://seymourhersh.substack.com/p/leaving-las-vegas. The American people are entitled to know whether Special Counsel Hur got it right. Will the recordings confirm that the President has a "poor memory" and "diminished faculties"? Hur Report at 248. Or will the recordings substantiate the claims of the President, the Vice President, and other senior Administration officials that the President is the paradigm of "vigor" and "[e]nergy" ? The Federalist No. 70, at 391 (C. Rossiter ed. 1999) (A. Hamilton). The American People deserve an answer—or at least a key piece of insight—to that question now, not later.

In short, the public has a massive interest in assessing the Special Counsel's decision not to charge the President because of his poor memory and diminished mental faculties. And it has a massive interest in assessing that conclusion before the November 5 election. Given that interest, the parties have acted expeditiously from the very start of this case and briefed the issues on an expedited schedule set by this Court. The public's interest in the underlying recordings have not disappeared just because President Biden is no longer running for President. Judge Berman

3

Jackson recognized as much when she expedited consideration of the parties cross-motions for summary judgment in *Comm. on the Judiciary v. Garland*, No. 24-cv-1911 (ABJ) (D.D.C.), which involves the Judiciary Committee's request for the same recording.  That case was filed months after this one, and the parties did not complete summary judgment briefing until August 29, 2024, but oral argument has been set for October 28, 2024.  And while Judge Berman Jackson is certainly correct to recognize that this issue remains of paramount importance, that case may not reach the merits because it involves complicated threshold questions that are not present here.  There is thus no good reason why this Court should not follow the same course and expedite its consideration of this case.  This Court should not deprive the public of critically important information by declining to rule on summary judgment motions briefed on an expedited schedule that have been pending before it since August 1.

## CONCLUSION

The matter remains urgent, it has been fully briefed and presents a binary decision point, and the Court has had ample time for consideration.  The case should be expedited.[1]

---

[1] Defendant opposes this Motion.  Press Coalition Plaintiffs take no position on the Motion. Plaintiff Judicial Watch states, "Because Judicial Watch asked in its July 29, 2024 Reply (ECF No. 47) that the Court under the Civil Expediting Act expedite its consideration of the parties' cross-motions, Judicial Watch does not oppose Heritage's request for the same relief."

4

Dated:  October 25, 2024

DANIEL D. MAULER
(D.C. Bar No. 977757)
General Counsel
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

KYLE BROSNAN
(D.C. Bar No. 90021475)
Chief Counsel, Oversight Project
The Heritage Foundation
Telephone:  (202) 608-6060
Email:  Kyle.Brosnan@heritage.org

Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(D.C. Bar No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:   (703) 261-4194
Email:  samueledewey@sedchambers.com

ERIC NEAL CORNETT
(D.C. Bar No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email:  neal@cornettlegal.com

MAX TAYLOR MATHEU
(D.C. Bar No. 90019809)
Telephone:  (727) 249-5254
Email:  maxmatheu@outlook.com

PAUL D. CLEMENT
(D.C. Bar No. 433215)
ERIN E. MURPHY
(D.C. Bar No. 995953)
JAMES Y. XI*
(D.C. Bar No. 1617537)
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA  22314
Telephone:  (202) 742-8900
Email:  paul.clement@clementmurphy.com
Email:  erin.murphy@clementmurphy.com
Email:  james.xi@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs*