IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HERITAGE FOUNDATION,** *et al.*<br><br>         Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>         Defendant.<br><br>**JUDICIAL WATCH, INC.**<br><br>         Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>         Defendant.<br><br>**CABLE NEWS NETWORK, INC.,** *et al.*,<br><br>         Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>         Defendant. | Case No. 1:24-cv-00700 (TJK)<br>(Consolidated Cases) |

**HERITAGE PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER OR IMMEDIATE RULING ON PENDING MOTIONS**

Under Federal Rule of Civil Procedure 65(b), Plaintiffs, The Heritage Foundation and Mike Howell ("Heritage Plaintiffs"), move for a temporary restraining order directing Defendant to produce all recordings of former President Joseph R. Biden's Interview with Special Counsel Robert K. Hur, redacted by static overlay against the transcript produced at ECF Nos. 34-3, 34-4, within 4 (four) hours of this Court's order.  In the alternative, Heritage Plaintiffs move for an immediate ruling on the fully briefed cross-motions for summary judgment.  Heritage Plaintiffs also request an immediate emergency status conference either in-person or virtually as to both

1

these issues and to ensure that Defendant confirms on the record that the underlying recordings are still being securely maintained and preserved.[1]  **PLAINTIFFS SEEK SUCH A HEARING NO LATER THAN MAY 17, 2025**.  Due to the fast-evolving situation, Heritage Plaintiffs respectfully request permission to supplement this Motion at any hearing or as events transpire.  In support thereof, Heritage Plaintiffs rely on all papers they have filed to date and state as follows:

1. Regardless of Defendant's plans to possibly release the records sought in this action on May 20, 2025, and the fact that Heritage Plaintiffs believe the Department was in the process of preparing a redacted recording for release on that date, the current state of the record is that the "interview transcripts and audio recording were maintained in a SCIF within the Executive Office of the President" because "the interview was treated as Top Secret."  Declaration of Bradley Weinsheimer at ¶ 16 (ECF No. 34-2).  The records sought in this action also clearly remain subject to a formal claim of Executive Privilege.  *See* ECF No. 34-7.

2. Despite the foregoing, *Axios* has obtained what they characterize as follows:

> Amid long, uncomfortable pauses, Joe Biden struggled to recall when his son died, when he left office as vice president, what year Donald Trump was elected or why he had classified documents he shouldn't have had, according to audio Axios obtained of his October 2023 interviews with special counsel Robert Hur.

*See* Exhibit 1 to the Declaration of Kyle Brosnan (May 17, 2025).  In the description of the YouTube links posted by *Axios*, *Axios* states "*Axios* obtained the audio of former President Biden's October 2023 interviews with special counsel Robert Hur."  *Id.* at Ex. 4.  The voices appear to be those of the individuals present at the interview.  *Id.* at ¶ 4.

3. But Axios only released *portions* of the audio sought.  And it appears that portions of the recording released by Axios are *non-contiguous* without notation.  Start with the clip at the following link:  https://www.youtube.com/watch?v=u1_37O4GmgQ.  Proceed to timestamp 1:00 in that clip.  Then compare pages 21–22 of the transcript of the interviews produced by the

---

[1] The Media Coalition takes no position on this Motion, Plaintiffs understand the Department to oppose this Motion, Plaintiffs have been unable to obtain Judicial Watch's position.

Department in ECF No. 34-4. The portion of the transcript highlighted in yellow is omitted in the *Axios* YouTube post without any apparent interruption or notation of omission:

```
Case 1:24-cv-00700-TJK    Document 34-4    Filed 05/31/24    Page 22 of 100
                                              DRAFT                    21
 1    [0:06:22.2]
 2              PRESIDENT BIDEN:  Yeah, I had the original and I
 3    just put it in the book and that was it.
 4              MR. KRICKBAUM:  Okay.  Did -- were you aware that
 5    you had kept it after your term as Vice President?  Did you
 6    know that you had it?
 7              PRESIDENT BIDEN:  I, I, I, I don't know that I
 8    knew, but it wouldn't have -- it wasn't something I would
 9    have stopped to think about.
10              MR. KRICKBAUM:  The reason I ask is it's been
11    written about.  Bob Woodward wrote about it in one of his
12    books.  Jules Witcover wrote about it in his biography of
13    you.  So that's the reason I ask is if it was something that
14    you wanted to hang onto because it was going to be the
15    subject of reporting or history.
16              PRESIDENT BIDEN:  I don't know if it was going to
17    be the subject of reporting, but I wanted to hang -- I guess
18    I wanted to hang onto it just for posterity's sake.  I mean,
19    this was my position on Afghanistan.  And it later became
20    discussed, unrelated to my discussion.  It became discussed
21    inside the foreign policy establishment that I was
22    recommending and -- anyway.
23              MR. KRICKBAUM:  I mentioned a couple of books.
24    Yesterday you mentioned that there was a book you were
25    thinking about writing before you decided to run for --
                        FREE STATE REPORTING, INC.
                     Court Reporting   Transcription
                        D.C. Area 301-261-1902
```



4.     How *Axios* obtained audio that, on the record in this case may well be classified (and taking *Axios* at their word that they have the "*the* audio", *is* classified), and in any event is still subject to a formal claim of privilege is a mystery. The apparent splicing without notation

only adds riddle and enigma. The Department represented to the undersigned that the Department did not release records to *Axios* and Heritage Plaintiffs do not doubt that representation. That said, *Politico* reported as follows:

> POLITICO first reported on May 7 that the administration intended to release the audio, but the material was under the control of the Justice Department, and Trump said Friday that White House was not directly involved in handling the disclosure.
>
> "I haven't looked into that. That's up to Pam and the group," he told reporters aboard Air Force One as he returned from the Middle East, referring to Attorney General Pam Bondi.
>
> Hours later, POLITICO reported that the Trump administration was preparing to release the audio to Axios, according to three people familiar with discussions surrounding the audio's release.

Brosnan Decl. at Ex. 3. The remarkable question remains: How did a record subject to a claim of Executive Privilege and possibly classified make it into the hands of *Axios*? Add to that how did that record end up being spliced without notion? The Court must require an immediate answer to that question.

5. This situation is untenable. Full disclosure is necessary *now*. One of the two journalists who (apparently) has the full tape is Alex Thompson of *Axios*, the man with a clear financial interest in *how* the audio is portrayed given his forthcoming book with Jake Tapper in which Tapper undergoes a remarkable conversion from having favorably covered President Biden when President Biden was in Office to now critically reporting on President Biden. The only thing that is certain is that the selective release has been optimized to sell his and Tapper's book, retailing at $27.00 a pop on Amazon.[2] No one is served by the current situation except Thompson & Tapper; everyone else is harmed. A portion of what appears to be the audio tapes is public. That portion is truncated without notion. The released audio is extraordinarily damning as to President

---

[2] https://www.amazon.com/Original-Sin-President-Cover-Up-Disastrous/dp/B0DTYKCJC9/ref=sr_1_1?crid=17B5ZW5D3HH5A&dib=eyJ2IjoiMSJ9.iCdo48S2lJfjV2TdkEgWA7oOFhsg4FmRJKCsFuSeqomweUXcTZAkpSZQN8YRd3TMPtou_W567gRIGMhpFvaFfZli53-Pqou1f8FnLT8FawBtJIyfCqb0Up8_xYi3H8L6-ErLteaaMFgsk1xaY_YHd-v5ih77GkS3jGWLbi_mG0ec6xrIriVARWyOr0GdY9y_AFPf617pf2zBoVU1xmLxYA.Q5nRm5xsycIZ7Sdsz61BYEdmXluGE8vWYTadR6KNrVs&dib_tag=se&keywords=jack+tapper&qid=1747456098&sprefix=jack+tapper%2Caps%2C87&sr=8-1

Biden. Do the other hours of recording confirm this impression? Or do they refute it? There is a reason there is an evidentiary rule of completeness. The irreparable harm from this situation literally flows to all parties in this case.

6. Plaintiffs are clearly entitled to the records; the public interest is overwhelming; the justification for the withholdings legally flawed. And on this extraordinary record, without full *immediate* release, Heritage Plaintiffs will suffer severe irreparable harm.

7. First, without the *full* tapes, Heritage Plaintiffs suffer extraordinary informational injury as they are unable to provide a full accounting to the American people. The American people must take the snippets leaked to *Axios* and *have apparently been spliced without notation*; not the true accounting which Heritage Plaintiffs seek to provide. In the hours since the *Axios* release, the news has been plastered with the *Axios* clips. They are everywhere; apparently all concede the voices match the interview participants; they may have even been officially released. *Axios* released approximately 14 minutes and 28 seconds of the nearly five-and-a-half hours of President Biden's interview with Special Counsel Hur. The media has created a running narrative about President Biden's mental fitness based on less than 4.5 percent of the entire interview. Indeed, the five released snippets of the interview do not even cover the portions of the transcript Special Counsel Hur cited in his report detailing President Biden's mental decline. *See* Hur Report at 208. For example, *Axios* did *not* release the portions of the interview where President Biden could not remember when he was Vice President. *Id.* Nor did *Axios* release President Biden's inaccurate depiction of his interactions with General Karl Eikenberry on Afghanistan policy. Without the full audio—and official acknowledgement of what may have been an authorized disclosure—Heritage Plaintiffs cannot provide the comprehensive analysis they would provide in light of their extensive work as concerns the Hur Report (*see* Nos. 24-cv-645, 952, 957, 959 (D.D.C.)) or as to the implications of President Biden's apparent incapacity.[3] Indeed, the irony here is palpable: *Defendant* opposed release of the *full* tapes on the grounds they could (somehow)

---

[3] *See* https://itsyourgov.org/investigation/bidens-autopen-presidency-part-i/; https://itsyourgov.org/investigation/the-autopen-presidency-part-ii-executive-orders/.

be manipulated. *See* Defendant's Motion for Summary Judgment at 1, 23, 30 (ECF No. 34-1); Defendant's Combined Opposition to Plaintiffs' Motions for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment at 34 (ECF No. 45). While that concern was badly misplaced (*see* ECF No. 49 at 41)—it has full application here where it appears that only minutes of the audio corresponding to the public transcripts were released.

8. Second, there is a palpable concern as to the very integrity of the records Heritage Plaintiffs seek here. How have records subject to Executive Privilege and possibly classified been released to Axios? *Axios claims to have the entire recording, which is still Top Secret.* And the audio has been spliced without notation. Are the underlying records intact or being manipulated by Axios given the financial interests at stake? That concern is extraordinary and without full production of the authentic record (or some comprehensive accounting) the harm to Heritage Plaintiffs is manifest. *Cf. Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, No. 17-cv-765 (GK), 2016 WL 10676292, at *3 (D.D.C. Dec. 12, 2016) (entering preservation order); *Citizens for Resp. and Ethics in Wash. v. Office of Admin.*, 593 F. Supp. 2d 156, 162 (D.D.C. 2009) (same); *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 565 F. Supp. 2d 23, 31–32 (D.D.C. 2008) (same).

Dated: May 17, 2025

Respectfully submitted,

DANIEL D. MAULER
(D.C. Bar No. 977757)
General Counsel
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

KYLE BROSNAN
(D.C. Bar No. 90021475)
Chief Counsel, Oversight Project
Telephone: (202) 608-6060
Email: Kyle.Brosnan@heritage.org

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(D.C. Bar No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone: (703) 261-4194
Email: samueledewey@sedchambers.com

ERIC NEAL CORNETT
(D.C. Bar No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

MAX TAYLOR MATHEU

        (D.C. Bar No. 90019809)
        Telephone:  (727) 249-5254
        Email:  maxmatheu@outlook.com

*Counsel for Plaintiffs*