IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HERITAGE FOUNDATION,** *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE**, <br><br> *Defendant.* | Case No. 1:24-cv-00700-TJK <br> (Consolidated Cases) |
| **CABLE NEWS NETWORK, INC.,** *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE**, <br><br> *Defendant.* | |

**DECLARATION OF JONATHAN M. BREYAN**

I, Jonathan M. Breyan, declare the following to be true and correct:

1.  I am a Senior Supervisory Attorney in the Office of Information Policy (OIP), United States Department of Justice (DOJ or the Department). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP – a role in which I have served since 2019. Prior to becoming a Senior Supervisory Attorney, I served as an Attorney-Advisor on the Appeals Staff at OIP from 2013-2019. The IR Staff of OIP is responsible for processing FOIA

requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO). Additionally, the IR Staff is responsible for processing FOIA requests seeking records from within the Special Counsel's Office (SCO).

2. The statements made in this declaration are based on my personal knowledge as well as information obtained and reviewed in the course of my official duties, including conversations I had with Department leadership and officials elsewhere in Department.

3. I understand that the Plaintiffs in this consolidated case all submitted FOIA requests to the Department seeking audio recordings of an interview of President Biden, which are discussed further below. The Department initially determined that the audio recordings should be withheld in full pursuant to FOIA Exemptions 5, 6, 7(A), and 7(C), but released these recordings this past May, first to Congress and then to the public. I further understand that two sets of Plaintiffs in this consolidated case—Heritage Foundation, *et al.*, and Cable News Network, Inc., *et al.*—have moved to recover attorneys' fees and related costs. I submit this declaration to explain the Department's actions with respect to the audio recordings at issue in this case.

## The Hur Investigation and the Interview of President Biden

4. On January 12, 2023, Attorney General Merrick Garland appointed Robert K. Hur as Special Counsel. *See* Ex. 1. Mr. Hur was "authorized to conduct the investigation of matters that are the subject of the initial investigation . . . led by United States Attorney John R. Lausch, Jr., including possible unauthorized removal and retention of classified documents or other records discovered at the Penn Biden Center for Diplomacy and Global Engagement and the Wilmington, Delaware, private residence of President Joseph R. Biden, Jr., as well as any matters that arose

from the initial investigation or may arise directly from the Special Counsel's investigation or that are within the scope of 28 C.F.R. § 600.4(a)." *Id.* ("SCO Investigation").

5.  As part of the SCO Investigation, President Biden voluntarily agreed to sit for an interview with Special Counsel Hur, which was recorded by audio. The resulting audio recordings are the records at issue in this case.

**Congressional Subpoenas for the Audio Recordings at Issue in this Consolidated Case**

6.  On February 12, 2024, the respective chairmen of three Committees of the United States House of Representatives (the Committees on the Judiciary, Oversight and Accountability, and Ways and Means) sent a letter to then-Attorney General Merrick Garland including a request for, among other records, the audio recordings of Special Counsel Hur's interview of President Biden. *See* Ex. 2.

7.  On February 27, 2024, the chairman of the Committee on the Judiciary subpoenaed the audio recordings of Special Counsel Hur's interview of President Biden. *See* Ex. 3.

8.  By letter dated May 15, 2024, Attorney General Merrick Garland informed President Biden that, with the advice of the Department's Office of Legal Counsel, he determined that the audio recordings fall within the scope of executive privilege. *See* Ex. 4.

9.  On May 16, 2024, President Biden asserted executive privilege over the subpoenaed audio recordings and instructed that they not be produced to the Committees. By letter dated May 16, 2024, Assistant Attorney General for Legislative Affairs Carlos Felipe Uriarte informed Representative Jim Jordan (Chairman of the Committee on the Judiciary) and Representative James Comer (Chairman of the Committee on Oversight and Accountability) that President Biden had done so. *See* Ex. 5.

10. On July 1, 2024, the House of Representatives Committee on the Judiciary filed a lawsuit to attempt to compel disclosure of the audio recordings to Congress. *See generally*

Complaint for Declaratory and Injunctive Relief, *Committee on the Judiciary v. Garland*, ECF No. 1, No. 24-cv-1911 (July 1, 2024).

11. On January 6, 2025, the chairman of the Committee on the Judiciary then issued a renewed subpoena for the audio recordings. *See* Ex. 6.

**The Multiple FOIA Requests and Lawsuits at Issue in this Consolidated Case**

12. I understand that this consolidated case originally involved three sets of Plaintiffs, Judicial Watch, Inc. (Judicial Watch); Heritage Foundation *et al.* (Heritage); and Cable News Network *et al.* (the Press Coalition), which submitted separate FOIA requests to OIP and filed separate lawsuits concerning those separate requests.

13. I understand that Judicial Watch submitted its FOIA request at issue in this case to OIP on February 8, 2024, requested expedited processing on that same day, and was granted expedited processing on February 13, 2024. *See* Exs. 7 & 8. I further understand that Judicial Watch filed its complaint in this case on March 11, 2024. *See* Complaint, ECF No. 1, *Judicial Watch, Inc., v. U.S. Department of Justice*, No. 24-cv-700 (D.D.C.).

14. I understand that Heritage submitted its FOIA request at issue in this case to OIP on February 12, 2024, requested expedited processing on February 22, 2024, and was granted expedited processing on February 26, 2024. *See* Exs. 9, 10 & 11. I further understand that Heritage filed its complaint in its case that was eventually consolidated into this case on April 3, 2024. *See* Complaint, ECF No. 1, *Heritage Foundation et al. v. U.S. Department of Justice*, No. 24-cv-960 (D.D.C.).

15. I understand that the Press Coalition first submitted a FOIA request, one of the FOIA requests at issue in this case, to OIP on February 16, 2024.[1] *See* Ex. 12. That request was

---

[1] I understand that the Press Coalition submitted other FOIA requests for the audio recordings at later dates. *See* Amended Complaint, ECF No. 26 (May 15, 2024).

4

initially submitted to the Department's Justice Management Division, which routed that request to OIP on February 20, 2024, and OIP subsequently acknowledged that request on March 15, 2024. *See* Ex. 13. I further understand that the Press Coalition filed its complaint in its case that was eventually consolidated into this case on April 4, 2024. *See* Complaint, ECF No. 1, *Cable News Network, Inc., v. U.S. Department of Justice*, No. 24-cv-961 (D.D.C.).

**The Department's Decision to Release the Records at Issue in this Consolidated Case**

16. In compliance with the FOIA's statutory requirements and consistent with the expedited processing determination issued to Judicial Watch on February 13, 2024, Judicial Watch's FOIA request for the audio recordings at issue in this case was evaluated after the request was received. So at the time the FOIA requests for the same audio recordings were submitted by Heritage and the Press Coalition and the subsequent lawsuits were filed, a FOIA request for those audio recordings was already being evaluated pursuant to the FOIA. Additionally, the Department's determination to withhold the audio recordings was made before the lawsuits were filed by Heritage and by the Press Coalition. Therefore, those lawsuits neither accelerated or otherwise impacted in any way the Department's evaluation of the FOIA requests for the audio recordings at issue in this case, nor the Department's determination to withhold them.

17. After January 20, 2025, the Department determined that it would comply with the renewed Congressional subpoena of January 6, 2025. The Department accordingly began to process the audio recordings for release to Congress.

18. On May 19, 2025, the Department released to the House of Representatives Committee on the Judiciary the audio recordings requested by the renewed subpoena.

19. Later that same day, and after releasing the audio recordings to the House of Representatives Committee on the Judiciary, the Department released to the public the same audio recordings that had been released to Congress by posting the recordings online in OIP's FOIA

5

Library. The Department, via counsel, also notified Plaintiffs in this case (including Judicial Watch) that the Department had done so. OIP did not further process the audio recordings after they were released to Congress in advance of releasing them to the public.

20. I have been advised that, before the Department released the audio recordings to Congress or to the public, the Department determined that because it would release the audio recordings to Congress, the Department should also release the audio recordings to the public as a matter of discretion. This decision was made notwithstanding the FOIA requests submitted by Plaintiffs or the subsequent lawsuits filed. The decision was made because the Department independently determined that release of the recordings to Congress justified their release to the public. In other words, whether or not this lawsuit was filed pursuant to FOIA requests for the audio recordings, the Department still would have released the audio recordings to the public as a matter of discretion.

21. I have further been advised that the Department also independently determined that the audio recordings should be released to the public as a matter of discretion. The records that this Administration has released as a matter of discretion include, but are not limited to, records relating to the SCO Investigation, and include, but are not limited to, records for which a FOIA request has been submitted or a lawsuit has been filed. *See, e.g.*, Immediate Declassification of Materials Related to the Federal Bureau of Investigation's Crossfire Hurricane Investigation, Memorandum for the Attorney General, the Director of National Intelligence, and the Director of the Central Intelligence Agency (March 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/immediate-declassification-of-materials-related-to-the-federal-bureau-of-investigations-crossfire-hurricane-investigation/; Exec. Order No. 14176, Declassification of Records Concerning the Assassinations of President John F. Kennedy, Senator Robert F. Kennedy, and the

Reverend Dr. Martin Luther King, Jr., 90 Fed. Reg. 8641 (January 23, 2025). In this case, the Department determined that, even though the audio recordings were exempt from disclosure pursuant to the FOIA, the audio recordings should be released to the public as a matter of discretion once they were produced in response to the Congressional subpoena. This determination was neither related to nor caused by the existence of this consolidated case seeking the audio recordings. In other words, even if the audio recordings had not been released to Congress, and even if this case was never filed, the Department still would have released the audio recordings to the public as a matter of discretion.

22. Accordingly, this consolidated case did not cause the Department to release the audio recordings at issue.

\*\*\*

23. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __15th__ day of August, 2025.

_Jonathan M. Breyan_
Jonathan M. Breyan