# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HERITAGE FOUNDATION,** *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>*Defendant*. | Case No. 1:24-cv-00700-TJK<br>(Consolidated Cases) |
| **CABLE NEWS NETWORK, INC.**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>*Defendant*. | |

**DEFENDANT'S OPPOSITION TO HERITAGE PLAINTIFFS' MOTION TO STRIKE AND TO TAKE LIMITED DISCOVERY**

**INTRODUCTION**

In this Freedom of Information Act lawsuit, Plaintiffs the Heritage Foundation and Mike Howell seek to depose the Deputy Attorney General of the United States to resolve a dispute over attorney's fees. This demand is frivolous, and to make matters worse Heritage also demands the depositions of other Department of Justice officials and moves to strike the Department's declaration filed to resolve the fee dispute. In support, Heritage cites not a single case permitting discovery in an attorney fees dispute under FOIA. Abundant case law, on the other hand, supports reliance on the Department's declaration from the Office of Information Policy, the office responsible for managing the Department's leadership offices obligations in FOIA matters. The Court should reject out of hand Heritage's motion to strike and for discovery.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[C]ourts generally disfavor motions to strike" so "[t]he moving party bears a heavy burden" to prevail. *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 45 (D.D.C. 2021) (quoting *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 251 (D.D.C. 2018)).

"Judges on this Court have repeatedly held that 'discovery in a FOIA action is generally inappropriate.'" *Citizens For Resp. & Ethics in Wash. v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 55 (D.D.C. 2006) (quoting *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000)); *see also, e.g.*, *Wheeler v. CIA*, 271 F.Supp.2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."); *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (noting that "discovery is disfavored" in FOIA actions). Courts in this district have granted limited FOIA discovery at the merits stage only on an "extraordinary basis," when there

is "evidence of some wrongdoing," *Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d at 56, for instance to determine whether an agency "improperly destroyed responsive records," *Citizens for Resp. & Ethics in Washington v. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 334 (D.D.C. 2011). No court to the Department's knowledge has permitted discovery in support of an attorney's fees petition in a FOIA suit.

## ARGUMENT

### I. Heritage Has Not Met its "Heavy Burden" to Strike the Breyan Declaration.

#### A. The Breyan Declaration is reasonably based on both his own personal knowledge and on consultations with colleagues.

As Heritage concedes, a declarant's "personal knowledge requirements are relaxed in a FOIA case." Memo. in Supp. of Ps' Mot. to Strike the Decl. of Jonathan M. Breyan and to Take Limited Disc. at 5, ECF No. 80 (Aug. 29, 2025) (Discovery Mot.). A declarant may "consult[] with his colleagues who had personal knowledge" and relay information based on those consultations. *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1358 (D.C. Cir. 1983). And a declarant may include information that was "relayed to [the declarant] by her subordinates." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019). As a result, "hearsay in FOIA declarations is often permissible." *Schoenman v. FBI*, 575 F. Supp. 2d 166, 172 (D.D.C. 2008).

The Breyan Declaration was "based on [Mr. Breyan's] personal knowledge as well as information obtained and reviewed in the course of [his] official duties, including conversations [he] had with Department leadership and officials elsewhere in Department." Declaration of Jonathan M. Breyan ¶ 2, ECF No. 76-1 (Aug. 15, 2025) (Breyan Decl.). Information outside Mr. Breyan's personal knowledge thus came from reliable sources, including "consult[ations] with his colleagues who had personal knowledge." *Weisberg*, 705 F.2d at 1358. The Breyan Declaration

2

therefore more than meets the relaxed personal knowledge requirements applicable in FOIA cases.

Heritage is correct that some courts have asked a FOIA defendant for additional information if the court identifies a "lack of connection between the information [in a declaration] and the declarant's ordinary official duties." *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1016 (D.C. Cir. 2024). But declarations are proper from individuals "responsible for supervising and coordinating FOIA requests," *Bryant v. CIA*, 742 F. Supp. 2d 90, 94 (D.D.C. 2010), and from those with "a general familiarity with the responsive records and procedures used to identify those records," *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012). The Breyan Declaration easily meets this standard. Mr. Breyan works for the Department's Office of Information Policy (OIP), which processes "FOIA requests seeking records" from within OIP, from within the Department's six leadership offices, and "from within the Special Counsel's Office." Breyan Decl. ¶ 1. Mr. Breyan has worked in OIP for more than twelve years and has held a supervisory role in that office for the last six. *Id.* As part of his duties, Mr. Breyan "supervis[es] the handling of the [FOIA] requests subject to litigation" processed by OIP. *Id.* As someone "responsible for supervising and coordinating FOIA requests," Mr. Breyan is eminently qualified to serve as the declarant in this case. *Bryant*, 742 F. Supp. 2d at 94.

Heritage asserts that Mr. Breyan has no connection to "high-level Departmental decision making let alone communications with White House Counsel's Office or the President of the United States himself." Discovery Mot. at 7. But as the Breyan Declaration makes clear, Mr. Breyan had "conversations . . . with Department leadership and officials elsewhere in Department" on which some statements in his declaration are based. Breyan Decl. ¶ 2. It is entirely unremarkable for a FOIA declarant to "consult[] with his colleagues who had personal knowledge"

3

of the events at issue. *Weisberg*, 705 F.2d at 1358. And the Breyan Declaration nowhere mentions the White House Counsel's Office or President Trump so Mr. Breyan need not have a connection to those entities.

Heritage's other points barely deserve mention. Heritage may not demand that the Department provide a declaration from a "high-level official," Discovery Mot. at 16, especially where, as explained in detail above, the Breyan Declaration satisfies all relevant requirements under the FOIA.[1] The only "misaligned expectation[]" here, *id.*, seems to be Heritage's expectation that the Deputy Attorney General or similar Department official need personally submit a declaration in an attorney's fees dispute.

### B. Heritage's other objections to the Breyan Declaration are unpersuasive and unsupported.

Heritage also raises a potpourri of objections to specific facts reported in the Breyan Declaration, but none of its objections are persuasive.

Heritage objects to some facts on hearsay grounds, but as explained above, "hearsay in FOIA declarations is often permissible," *Schoenman*, 575 F. Supp. 2d at 172, and a FOIA declarant may "consult[] with his colleagues who had personal knowledge" of the relevant facts, *Weisberg*, 705 F.2d at 1358. Mr. Breyan need not have been "in the room," *contra* Discovery Mot. at 14, as long as he consulted with someone who was. As explained in the Breyan Declaration, Mr. Breyan consulted with other Department officials. Breyan Decl. ¶ 2.

Next, Heritage lists a handful of details that it believes the Breyan Declaration should have discussed, but those irrelevant details are unnecessary for the Court to resolve the attorney's fees

---

[1] It is unclear why Heritage says it was "crystal clear with the Office of the Attorney General" about this issue, Discovery Mot. at 16, but did not even raise the subject with the attorneys working on this case.

4

dispute in this case.  The parties appear to agree that the question at this stage in the case is "whether [Heritage's] lawsuit was a substantial . . . cause of the [D]efendant's change in conduct." Memo. In Supp. Of Ps' Mot. for Attorneys' Fees and Costs at 3, ECF No. 73 (July 25, 2025) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 610 (2001)); *compare id.*, *with* Def's Resp. to Ps' Mots. for a Determination of Eligibility and Entitlement to Att'y Fees at 5, ECF No. 76 (Aug. 15, 2025).  The Breyan Declaration answers that question definitively: "[T]his consolidated case did not cause the Department to release the audio recordings at issue."  Breyan Decl. ¶ 22.

Answers to other questions—*what* specific official in the Department made the discretionary decision to release the audio; precisely *when* was that decision made; or why has the Department decided not to release *other records* at issue in *other cases*—are superfluous.[2]  Likewise with respect to details about actions taken by entities uninvolved in this case.  Heritage repeatedly references decisions purportedly made by President Trump and/or by the White House Counsel's Office.  *See, e.g.*, Discovery Mot. at 9-10 & 10 n.4.  But it is not for Plaintiff to question how the Department went about making the decision that it made, or to pry into any communications the Department had with the White House, including whether or how the former President's assertion of executive privilege over the audio recordings was analyzed.  What is relevant are the facts addressed by the declaration:  The Department's discretionary release of the

---

[2] The Breyan Declaration's statement that the Department "released to the House of Representatives Committee on the Judiciary the audio recordings requested by the renewed subpoena" is entirely accurate.  Breyan Decl. ¶ 18; *contra* Discovery Mot. at 12.  The "audio recordings" discussed in the Breyan Declaration referred to the audio recordings of President Biden's interview with Special Counsel Hur, *e.g.* Breyan Decl. ¶¶ 3, 5, and those recordings were released to the House of Representatives Committee on the Judiciary, *id.* ¶ 18.

5

audio recordings was the result of Congress's renewed subpoena for the recordings as well as the change in administration. *See* Breyan Decl. ¶¶ 20-22. This FOIA litigation played no role. *See id.* That should come as no surprise to Plaintiffs here. President Trump as a candidate opposed withholding the audio recordings from Congress. *See, e.g.*, Josh Gerstein & Jordain Carney, *White House to Republicans: You're Not Getting Audio of Biden's Interview with Hur*, Politico (May 16, 2024, updated at 2:52 PM EDT), https://www.politico.com/news/2024/05/16/biden-moves-to-block-house-from-getting-his-classified-docs-interview-tapes-00158323 (quoting Trump campaign spokesperson as accusing President Biden of having "irretrievably politicized the key constitutional tenet of executive privilege" and trying to use the privilege to "run political cover for Crooked Joe"). It stands to reason that as President, he would comply with a renewed congressional request.

Heritage also challenges the Breyan Declaration's statement that the Department decided to withhold the audio recordings before the lawsuits in this case were filed in early April 2024, noting that the Department had not publicly confirmed its position on the audio recordings as of mid-April 2024. *See* Discovery Mot. at 8-9. But there is no contradiction here. Making a decision and publicly confirming the decision in a court filing are separate steps. And it is both true that: 1) the Department determined that it would withhold the audio recordings before Plaintiffs' lawsuits were filed, *see* Breyan Decl. ¶ 16; and that 2) as the public record in this case makes clear, the Department could not confirm its complete position on those recordings until after the formal assertion of executive privilege. For example, while the Department could confirm by at least April 30, 2024, that it "ha[d] withheld in full" the audio recordings at issue, Joint Status Report at 1, ECF No. 12, the complete bases on which the Department ultimately relied at summary

6

judgment were not yet finalized until after that date, *see, e.g.*, Garland Letter, ECF No. 34-7 (May 15, 2024) (letter recommending that the President assert executive privilege over the audio recordings).

Finally, Heritage also references communications between Heritage's counsel and various Department officials over the past several months and claims those communications are somehow inconsistent with the Breyan Declaration. *See, e.g.*, Discovery Mot. at 13, 15. Setting aside the ethics of Heritage's counsel contacting the client components of the Department directly rather than through below-captioned counsel, *see* D.C. Bar Rule of Professional Conduct 4.2(a), these communications establish only that the Department was willing to listen to Heritage's concerns, the exact opposite of bad faith. Further, the email communication that Heritage references between its counsel and Department official Paul Perkins is completely consistent with the Breyan Declaration. *Contra* Discovery Mot. at 13. Mr. Dewey in that email thanks Mr. Perkins for inquiring about the "'form' of release." *See* Second Declaration of Samuel Everett Dewey, Exhibit 2 at 2, ECF No. 75-2 (July 25, 2025). But as the Breyan Declaration attests, once the Department complied with the renewed congressional subpoena and produced the audio recordings to the Judiciary Committee, it then made the audio available to the public. *See* Breyan Decl. ¶ 20. Accommodating a preferred form of release says nothing about what motivated the release in the first place. And of course, the question of what motivated the audio recordings' release is answered definitively in the Breyan Declaration. *See id.* ¶¶ 20-22.

By selecting Mr. Breyan as the declarant in this case, the Department of Justice gave Mr. Breyan the authority to speak on the Department's behalf and make the representations contained in his declaration. The Breyan Declaration was reviewed and approved by Department leadership

7

and officials within the Department, and the Department stands by the Breyan Declaration in its entirety. Heritage has ultimately offered nothing to overcome the "presumption of good faith" accorded to the Department's declaration here. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

## II. Heritage's Motion for Discovery Is Unreasonable, Borders on Frivolous, and Should Be Denied.

"Judges on this Court have repeatedly held that 'discovery in a FOIA action is generally inappropriate.'" *Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d at 55; *see also, e.g.*, *Wheeler*, 271 F. Supp. 2d at 139 ("Discovery is generally unavailable in FOIA actions."); *Justice*, 798 F. Supp. 2d at 47 ("discovery is disfavored" in FOIA actions); *Judicial Watch*, 108 F. Supp. 2d at 25 ("[D]iscovery in a FOIA action is 'generally inappropriate.'"). Courts in this district have granted limited discovery only on an "extraordinary basis," when there is "evidence of some wrongdoing," *Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d at 56, for instance to determine whether an agency "improperly destroyed responsive records," *Citizens for Resp. & Ethics in Wash.*, 828 F. Supp. 2d at 334.

In this case, the only remaining issue is an attorney's fees dispute, and "it is not expected that fee contests should be resolved only after the type of searching discovery that is typical where issues on the merits are presented." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1329 (D.C. Cir. 1982). Indeed, "[i]n the rare cases when discovery is permitted, it is usually confined to the scope of an agency's search, an agency's indexing and classification procedures, and similar factual matters," not to ancillary fee disputes. *Hall & Assocs. v. EPA*, No. 10-cv-0228, 2011 WL 13373977, at *2 (D.D.C. Feb. 28, 2011); *see also Judicial Watch*, 108 F. Supp. 2d at 25 ("Discovery may be appropriate when the plaintiff can raise sufficient question *as to the agency's*

8

*good faith in processing or in its search.*" (emphasis added)).  Few FOIA plaintiffs have ever sought discovery at the attorney's fees stage, but those that have found their motions denied.  *See, e.g.*, *Anderson v. Sec'y of Health & Hum. Servs.*, 80 F.3d 1500, 1507 (10th Cir. 1996) (denial of FOIA fee discovery "was not an abuse of discretion" because the court "fail[ed] to see how the information [the plaintiff sought] would be relevant to the amount of the fee award"); *Whittecar v. Dep't of Veteran Affs.*, No. 19-cv-164, 2020 WL 13578381, at *5 (D. Wyo. May 12, 2020) (declining to permit fee-stage discovery meant "to establish with certainty why the VA mailed the [at-issue] records").  The Department is aware of no case in which a court granted a FOIA plaintiff's motion for discovery at the attorney's fees stage, and Heritage certainly cites none.

But even if discovery at the fees stage of a FOIA case were permissible, Heritage has not established the "extraordinary basis" necessary to allow discovery in a FOIA matter.  *Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d at 56.  As explained in detail above, the Breyan Declaration is admissible and accurate, and none of Heritage's complaints about the declaration hold water.  *See supra* Section I.  There is thus no basis at all—let alone an "extraordinary" one—for discovery here.  Indeed, Heritage's complaints about the Breyan Declaration did not prevent Heritage from filing a 20-page reply to the Department's fee opposition.  *See generally* Reply in Support of Heritage Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. 79 (Aug. 29, 2025).

Not only would discovery here be inappropriate as a general matter, but Heritage has also failed to justify the specific discovery that it seeks.  Heritage has demanded depositions of high-ranking Department officials, including at least the Deputy Attorney General, the Acting Associate Attorney General, the Deputy Chief of Staff & Senior Policy Counsel for the Deputy Attorney General, and an Associate Deputy Attorney General.  But given the obvious "disruption or

9

diversion" that a deposition would impose on these high-level officials' "official tasks," "a party attempting to depose a high-ranking government official must demonstrate 'extraordinary circumstances' requiring such a deposition." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (first quoting *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 15-mc-00752, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015); then quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)).

Heritage does not even acknowledge this body of law, let alone try to satisfy it. Nor could Heritage establish the required "extraordinary circumstances" even if it tried. *Newman*, 531 F. Supp. 3d at 188 (quoting *Simplex*, 766 F.2d at 586). Again—all that remains in this case is a fee dispute. Such an ancillary, non-merits issue cannot provide the "extraordinary" justification necessary to impose the "disruption or diversion" of a deposition on the high-level officials that Heritage seeks to depose. *Id.* (quoting *Galan-Alvarez*, 2015 WL 5602342, at *4).

But even setting aside the unique burdens that these depositions would place on these high-level officials, Heritage has not explained why the specific depositions that it seeks would even help the Court resolve the parties' fee dispute.

First, Heritage seeks a deposition of the Chief of Staff for the Attorney General & Acting Associate Attorney General, Chad Mizelle. But Heritage nowhere explains what information Mr. Mizelle allegedly has, how that information will help the Court adjudicate the parties' attorney fee dispute, or why that information is not available elsewhere.

Second, Heritage seeks to depose Paul Perkins, an Associate Deputy Attorney General. As with Mr. Mizelle, nowhere in Heritage's motion does Heritage explain what information Heritage believes Mr. Perkins has, how that information will help the Court adjudicate the parties'

10

attorney's fees dispute, or why that information is not available elsewhere.

Third, Heritage seeks to depose Brian Nieves, but Heritage does not mention Mr. Nieves *at all* in its motion for discovery, its declaration in support of that motion, or its other filings in support of its fees motion. By failing to even mention Mr. Nieves, let alone explain his purported role in this case, Heritage thus has not provided any basis to subject him to the burden of a deposition.

Fourth, Heritage seeks to depose Elizabeth J. Shapiro, the Deputy Director of the Federal Programs Branch who represents the Department in this case. *See* Notice of Appearance, ECF No. 33 (May 31, 2024). But the "practice of deposing opposing counsel . . . is generally disfavored in federal courts." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011); *see also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). A party seeking to depose opposing counsel thus "must prove the deposition's necessity." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009). Heritage has not explained its purported need to depose Ms. Shapiro at all, let alone established that "deposition's necessity" in this dispute over attorney's fees. *Id.*

Fifth, Heritage seeks to depose the Department's declarant, Jonathan M. Breyan, and again provides no explanation to justify its demand. Indeed, what generalized explanation Heritage does supply for its discovery demand is singularly inapplicable to Mr. Breyan. At a high level of generality, Heritage tries to justify the discovery it seeks as because, Heritage says, it must depose officials with "*actual* knowledge of the facts." Discovery Mot. at 1. But Heritage then spends most of its motion explaining why it believes Mr. Breyan "lack[s] . . . personal knowledge" of those facts. *Id.* at 17; *see also id.* at 4-5. So even under Heritage's own theory for needing

11

discovery, a deposition of Mr. Breyan would be unjustified.

Sixth, and purportedly in the alternative, Heritage seeks to depose the Deputy Attorney General, the second-ranking official in the Department of Justice. As with Heritage's other discovery demands, Heritage nowhere explains why it feels the need to depose the Deputy Attorney General, or why a deposition of this high-ranking official would help the Court resolve the parties' fee dispute here. Indeed, a deposition of the Deputy Attorney General would be exceptionally unjustified given the Deputy Attorney General's many important responsibilities. Heritage's temerity in even suggesting that the Deputy Attorney General should be deposed in an attorney's fees dispute underscores Heritage's unreasonable approach to this case.

To summarize, Heritage has provided no authority for its position that discovery against a FOIA defendant is possible at the fee stage. And even if discovery against the Department were available at the fee stage, Heritage has failed to provide the "extraordinary basis" necessary to justify that discovery, nor any valid basis to question the accuracy of the Breyan Declaration. And even if Heritage had provided an "extraordinary basis" for discovery in general, Heritage has not justified the specific discovery that it seeks. That is, Heritage has not even tried to satisfy the distinct, "extraordinary circumstances" test that it must meet for each deposition of a high-level government official that it seeks, nor has Heritage explained, even on more basic terms, why any of the depositions it has demanded would be helpful to resolve the parties' attorney's fees dispute.

## CONCLUSION

For all these reasons, the Court should deny Heritage's Motion to Strike and Motion for Discovery.

Dated: September 12, 2025                    Respectfully submitted,

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

<u>*/s/ Robert W. Meyer*</u>
ROBERT W. MEYER (NY Bar No. 5942842)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: 202-305-0872
Robert.W.Meyer@usdoj.gov

*Counsel for Defendant*